UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

James Earl Williams,

                                    Petitioner,

v.

Tim Perez, Warden,

                                    Respondent.

Case No.:  15-cv-1777-CAB (JLB)

**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.    INTRODUCTION

Petitioner James Earl Williams ("Petitioner") is a state prisoner who is proceeding pro se and in forma pauperis with a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.  (ECF No. 1, hereinafter "Pet.".)

Petitioner challenges his September 27, 2013 San Diego County Superior Court conviction where a jury found him guilty of petty theft with three prior convictions, second degree burglary, and robbery.  (*Id.* at 2.)  Petitioner was sentenced to state prison for a term of four years four months.  (*Id.* at 1.)

Petitioner appealed his conviction to the California Court of Appeal, Fourth Appellate District, Division One.  (ECF No. 10–9; 10–11.)  On December 16, 2014, that

1

court filed an unpublished opinion unanimously affirming the judgment.  (ECF No. 10–12.)  Petitioner's ensuing petition for review was denied by the California Supreme Court on February 25, 2015.  (ECF No. 10–13; 10–14.) Petitioner did not file a petition for certiorari in the United Sates Supreme Court.  (Pet. at 3.)

On August 12, 2015, Petitioner filed the instant Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  (*See* Pet. at 1.)  For the following reasons, the Court finds that the state court adjudication of the claims raised in the Petition is not contrary to, nor does it involve an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  Accordingly, the Court **RECOMMENDS** the Petition be **DENIED**.

## II.   UNDERLYING FACTS

This Court gives deference to state court findings of fact and presumes them to be correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding that findings of historical fact, which include inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The relevant facts as found by the California Court of Appeal are as follows:

A. *January 2013[] Robbery at Marshalls (Count 4)*

On January 5[,] Juan Ruiz was working as a loss prevention officer at the Marshalls in El Cajon. Using a surveillance camera, Ruiz watched Williams walk into the shoe department, select a pair of Adidas shoes, and then, after trying them on, put them into a shopping bag he had carried into the store. Ruiz testified the shopping bag had comic characters on it and appeared to be empty before Williams put the shoes in it.

Armando Valdez, a loss prevention officer who worked with Ruiz that day, also watched Williams from the camera room of the store as Williams selected the Adidas, pulled the security sensors off of the shoes, and placed the shoes in the bag he was carrying. Valdez later went to the shoe department and found the Adidas box he had seen Williams replace on the shelf after he removed the shoes. Only the security sensors were left in the box.

2

Ruiz—who is six feet tall, weighs 340 pounds, and was dressed in plain clothes—went to the floor of the store and was behind Williams when Williams walked out of the store. Ruiz testified that he ran around in front of Williams as Williams ran outside the store without paying for the merchandise he was carrying. Ruiz identified himself as a Marshalls loss prevention officer and showed Williams his Marshalls identification card. Ruiz tried to prevent Williams from leaving by cutting in front of Williams and turning to face him. Ruiz testified that Williams ran into him with one hand up and "pushed [him] out of the way" by putting his hand on Ruiz's shoulder.

Ruiz testified that when Williams pushed him out of the way, he (Ruiz) "disengage[d]" in accordance with Marshalls policy requiring its personnel to stop apprehension attempts once a person places a hand on an employee. Williams ran through the parking lot carrying the merchandise he had taken. Ruiz then called the police.

## B. *February Petty Theft at Walmart (Count 1)*

On February 24, in the men's department of a Walmart store in La Mesa, Williams quickly selected a number of items of men's clothing from the store displays without looking at their prices. A Walmart asset protection associate testified that this sort of "quick selection" indicates suspicious activity.

After taking the merchandise, Williams rode the store escalators to the automotive department on the second floor. He went down an aisle, pulled a reusable bag out of his pocket, and placed the merchandise inside the bag. Williams left the store with the merchandise without paying for it.

Near the exit, a Walmart asset protection associate approached Williams, identified herself as Walmart security, and asked him to return to the store. Williams did not comply with her request and fled through the parking lot with the merchandise he had taken.

/ / /

/ / /

### C. *March Burglary and Petty Theft at the Same Walmart (Counts 2 & 3)*

On March 1[,] at the same La Mesa Walmart, Williams selected pieces of both men's and women's clothing and placed them inside a shopping cart. He then moved to the stationery department, which is the department closest to the exit. There he placed the merchandise he had taken into two reusable bags he had brought with him to the store. He then placed the bags into the shopping cart and left the store without the bags or merchandise.

A few minutes later, Williams returned to the Walmart stationery department, grabbed the reusable bags containing the merchandise he had selected, and left the store with the merchandise without paying for it. La Mesa police arrested Williams a few minutes later outside the store.

## III.   STANDARD OF REVIEW

Title 28, United States Code, § 2254, subsection (a) provides the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Additionally, Petitioner's habeas claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254(d). *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997) (Federal courts reviewing any petition filed in federal court after the April 24, 1996 enactment of "AEDPA," will apply its provisions). Under AEDPA, the standard of review for Petitioner's habeas claims, is as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Clearly established Federal law," as understood in the context of § 2254(d)(1), consists of holdings of Supreme Court decisions. *Williams v. Taylor*, 529 U.S. 362, 365 (2000) (stating that the phrase "clearly established Federal law," as determined by the United States Supreme Court, refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision"). In order to grant habeas corpus relief, a federal habeas court must rule out whether it is possible that "fair-minded jurists" could disagree that the decision is inconsistent with clearly established federal law. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). To satisfy § 2254(d)(2), a petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming it rests upon a determination of the facts, are objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Where there is no reasoned decision from the state's highest court, the federal habeas court "looks through" to the underlying appellate decision in applying AEDPA. *Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991); *see also Harrington*, 562 U.S. at 99–100 (holding that an unexplained denial of a claim by the California Supreme Court is an adjudication on the merits of the claim and is entitled to deference unless "there is reason to think some other explanation for the state court's decision is more likely").

## IV. DISCUSSION

Petitioner raises three claims in his Petition. First, he claims that there was insufficient evidence of force to sustain his robbery conviction. (Pet. at 6.) Second, he claims that the trial court improperly instructed the jury on the force element of robbery.

5

(*Id.* at 7.)  Third, he claims that his Sixth Amendment right to a fair trial was violated because his trial counsel rendered ineffective assistance.  (*Id.* at 8.)  Respondent contends that this Court should dismiss the Petition with prejudice and deny a certificate of appealability because Petitioner's robbery conviction was supported by sufficient evidence, Petitioner failed to exhaust his administrative remedies, and Petitioner's trial counsel did not render ineffective assistance.  (*See* Mem. of P. & A. Supp. Answer at 4–15, ECF No. 9.)

### A.    Ground One

Petitioner first claims that there is insufficient evidence of force to support his conviction of robbery.  (Pet. at 6.)  The Court construes this argument as implicating § 2254(d)(2).

The Fourteenth Amendment Due Process Clause protects a defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 569 U.S. 359, 364 (1970).  When reviewing an insufficient evidence claim in habeas proceedings, a federal court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard is applied with specific reference to the applicable state law defining the elements of the crime at issue.  *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en banc).

For a defendant to be convicted of robbery in California, he "must apply . . . force for the purpose of accomplishing the taking."  *United States v. Flores-Mejia*, 687 F.3d 1213, 1215 (2012) (quoting *People v. Anderson*, 51 Cal. 4th 989, 995 (2011)).  The amount of force required to sustain a robbery conviction is "some quantum amount of force in excess [of the amount of force] 'necessary to accomplish the mere seizing of property.'"  *Id.* at 995.  Therefore, a "slight push" or "tap" against the victim would be enough force to sustain a robbery conviction in California.  *People v. Garcia*, 45 Cal. App. 4th 1242, 1246 (1996).

Petitioner argues there is insufficient evidence of the force element to convict him of robbery.  Specifically, Petitioner argues that the evidence at trial fails to show an intentional use of force.  Instead, according to Petitioner, the evidence merely establishes that his collision with Juan Ruiz, the Marshalls loss prevention officer, was unavoidable because Ruiz cut him off as both men were running from the store.[1]  (Pet. at 6.)

A federal court faced with a factual record "that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.  By doing so, the federal court will "preserve the factfinder's role as the weigher of evidence." *Id.* at 319.  In a habeas proceeding, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 3 (2011)).

Petitioner presented this claim to the California Supreme Court in a petition for review, which was summarily denied.  (Pet. at 2; ECF No. 10–13; ECF No. 10–14.)  The California Court of Appeal, however, denied the claim in a reasoned opinion.  (ECF No. 10–12.)  Because there is no reasoned decision from the state's highest court, the Court "looks through" to this underlying appellate court decision and presumes that it provides the basis for the higher court's denial of Petitioner's claims. *See Ylst*, 501 U.S. at 804.

The Court of Appeal denied Petitioner's Ground One claim challenging the sufficiency of the evidence as follows:

> We are guided in our analysis by the decision in *People v. Garcia*, *supra*, 45 Cal.App.4th at page 1246. In *Garcia* "[t]he

---

[1] The thrust of Petitioner's Ground One claim is that the force at issue was unavoidable.  However, Petitioner also incorrectly recites California law in his Petition that suggests he may believe that in order to be convicted of robbery, "force even if slight must be shown to induce fear in the victim."  (Pet. at 6.)  The California Court of Appeal correctly held that the California Penal Code only requires the theft to be accomplished by either force or fear.  *See* Cal. Penal Code § 211.  It is not required for both elements to be proven.  *See id.*

evidence [showed that the] defendant approached the cashier while the register drawer was open and gave her a slight push, 'like a tap,' on her shoulder with his shoulder. Fearful defendant might be armed, the cashier moved away. Defendant then reached into the open register, grabbed the money and escaped. The cashier was not injured." (*Ibid.*) In concluding the "slight push" was sufficiently forcible to establish the force element of robbery, the Court of Appeal stated: "The defendant did not simply brush against the cashier as he grabbed for the money. He intentionally pushed against her to move her out of the way so he could reach into the register. . . . [P]ushing the cashier went beyond the 'quantum force which [was] necessary' to grab the money out of the cash register. We agree defendant appears to have been rather polite in his use of force, giving the cashier a mere 'tap.' Nevertheless, for purposes of the crime of robbery, the degree of force is immaterial." (*Ibid.*)

Similarly here, substantial evidence supports Williams's count 4 robbery conviction by establishing that Williams, like the defendant in *Garcia*, accomplished the theft by pushing the victim out of the way. Specifically, Ruiz testified that he identified himself to Williams as a Marshalls loss prevention officer and showed Williams his Marshalls identification card after Williams exited the store without paying for the merchandise he was carrying. Ruiz also testified that he tried to prevent Williams from leaving by running in front of him to cut him off and then turning around to face him.  Ruiz further testified that Williams ran into him with one hand up, "pushed [him] out of the way" by putting his hand on Ruiz's shoulder, and then ran away with the stolen merchandise.

Ruiz's   foregoing   testimony   constitutes   substantial evidence from which a reasonable trier of fact could find that Williams, in accomplishing his theft of the Marshalls merchandise, pushed the loss prevention officer out of the way as Williams was running away from the store with the merchandise, and this forcible act was motivated by his intent to steal the merchandise.

Williams   contends,   however,   that   the   evidence   is insufficient to support his robbery conviction because "it was not [he] who applied force, but [Ruiz] and the law of physics" that

applied force, and, thus, "the only physical contact was caused by an act over which [he (Williams)] had no control."

Williams's attempt to characterize his physical contact with Ruiz outside the Marshalls store as an inadvertent and unintentional collision is unavailing. In applying the substantial evidence standard of review, as already discussed, we must view the evidence in the light most favorable to the judgment (*People v. Johnson*, *supra*, 26 Cal.3d at p. 578), and we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206; *People v. Jones*, *supra*, 51 Cal.3d at p. 314). Here, Ruiz explicitly testified on direct examination that Williams "*pushed me out of the way* and ran to the parking lot." (Italics added.) When questioned further by the prosecutor, Ruiz reiterated, "I ran in front of [Williams], and he . . . just *pushed me out of the way*." (Italics added.) The prosecutor asked Ruiz to more specifically describe what Williams did, and Ruiz replied that Williams "*used one hand to push me out of the way*." (Italics added.) Later, when defense counsel cross-examined Ruiz and characterized Williams's physical contact with Ruiz as "run[ning] into you," Ruiz disagreed and stated, "Actually[,] it was more of a push."

Williams's claim that it was Ruiz, not Williams, who applied the force during the collision is meritless because it is based not on the evidence viewed in the light most favorable to the judgment, but on an interpretation that essentially asks this court improperly to reweigh Ruiz's testimony, give little weight to his testimony that Williams was running from the store with stolen merchandise after Ruiz identified himself as a loss prevention officer, and to disregard Ruiz's explicit and repeated testimony showing that Williams did not just run into Ruiz, but rather he used one hand to *push Ruiz out of the way*. Ruiz's testimony is substantial evidence from which a reasonable jury could find that Williams used force to retain the merchandise he was carrying after the Marshalls loss prevention officer tried to stop him, and in doing so he was motivated by the intent to steal that merchandise. By failing to present all the relevant evidence on the issue of whether the force he used force [sic] in stealing the merchandise was sufficient to constitute robbery, and in failing to present the evidence in the light most favorable to the

> People, Williams has failed to meet his burden of showing the evidence is insufficient to support his robbery conviction. (See *People v. Sanghera*, *supra*, 139 Cal.App.4th at p. 1574.)

(ECF No. 10–12, at 8–10.)

This Court concludes that the California Court of Appeal reasonably determined that a rational trier of fact could have found the essential element of force to support the robbery conviction beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. Juan Ruiz's testimony at trial was that Petitioner used intentional, and not accidental, force when he "pushed" Ruiz as he fled the store with stolen merchandise. (ECF No. 10–4, at 68–70, 78.) For example, when asked on cross-examination whether Williams's "only contact" with Ruiz was running into him, Ruiz clarifies that, "Actually[,] it was more of a push." (*Id.* at 78.)

Petitioner argues that Ruiz lied when he testified about Williams's use of force. However, a reviewing court must not make credibility determinations, but rather must defer to the trier of fact's express or implied resolution of any purported conflicts in evidence. *See McDaniel v. Brown*, 558 U.S. 120, 133–34 (2010). As the California Court of Appeal explained, Petitioner is improperly asking the Court to reweigh Ruiz's testimony and completely disregard Ruiz's repeated statements that Petitioner pushed Ruiz in the process of fleeing towards the parking lot. (ECF No. 10–12, at 10.) As such, Petitioner's argument concerning the veracity of Ruiz's testimony fails.[2]

In sum, Petitioner has not established that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" on the force element of robbery, given the evidence and testimony presented. *Jackson*, 443 U.S. at 324. The state court adjudication of Ground One was not based on an "unreasonable determination of the facts in light of the

---

[2] The Court notes that even if the undisputed evidence showed that the contact between Petitioner and Ruiz was purely accidental (which it does not), it appears that even accidental force could be sufficient to convict someone of robbery under California law. *See Anderson*, 51 Cal. 4th at 996 ("It was robbery even if, as [Petitioner] claims, [Petitioner] did not intend to strike [the victim], but did so accidentally."); *see also United States v. Flores-Mejia*, 687 F.3d 1213, 1215 (9th Cir. 2012) (analyzing *Anderson*).

evidence presented in the State court proceeding" under 28 U.S.C. § 2254(d)(2).  Thus, the Court **RECOMMENDS** habeas relief be **DENIED** as to Ground One.

### B.    Ground Two

As Ground Two, Petitioner claims that his Sixth Amendment right to a fair trial was violated when the trial court improperly instructed the jury on the force element of robbery. (Pet. at 7.)

After both parties rested their cases at trial, Petitioner (through counsel) requested that the state superior court instruct the jury on his defense of accident as he argued it was relevant to the mental state required for the force element of robbery.   Specifically, Petitioner proposed that the following instruction (CALCRIM 3404) should be used to address the mental state necessary to satisfy the force element: "The defendant is not guilty of robbery if he acted without the intent required for that crime[,] but acted instead accidentally. You may not find the defendant guilty of robbery unless you are convinced beyond a reasonable doubt that he acted with the required intent." (ECF No. 10–4, at 97–99.)   Petitioner argued before the superior court that this instruction was appropriate because there must be an intent to push or use force in order to find the defendant guilty of robbery.  (ECF No. 10–4, at 98.)  The superior court denied his request, concluding that the evidence showed only intentional force, and thus, did not support the accident instruction.  (ECF No. 10–4, at 99.)  The California Court of Appeal affirmed, ruling that the accident instruction did not apply to the case, and that any error was harmless, in any event.  (ECF No. 10–12 at, 13–15.)

Here, Petitioner no longer argues that the trial court should have given the jury the accident instruction (CALCRIM 3404).  Instead, he argues in Ground Two that the superior court should have *sua sponte* modified the accident instruction so as to advise the jury that for a defendant to satisfy the force element of the crime of robbery, "the defendant and not somebody else [must have] exerted the force." (Pet. at 7.)  Petitioner made this argument for the first time in his Petition for Review to the California Supreme Court.  (ECF No. 10–13, at 17–23.)  The California Supreme Court issued a silent denial of this instructional

error claim as it summarily denied the petition for review.  (ECF No. 10–14 ("The petition for review is denied.").)

### 1.    Procedural Default

Respondent argues that Petitioner's Ground Two is procedurally defaulted.   In making this argument, Respondent relies on the California Supreme Court's silent denial of Petitioner's instructional error claim on direct appeal from the California Court of Appeal.   Respondent is asking the Court to read the California Supreme Court's silent denial of Petitioner's claim on direct appeal as implicitly applying a procedural bar.  The Court declines to do so.

Procedural default in state court bars federal review only when the state court clearly and expressly sets forth its reliance on that ground.  *Harris v. Reed*, 489 U.S. 255, 261–62 (1989).   Here, because the California Supreme Court issued a silent denial, it did not expressly rely on procedural default.  (*See* ECF No. 10–14.)  Furthermore, established precedent in the Ninth Circuit dictates that a court's decision on the issue of procedural default is to be informed by furthering "the interests of comity, federalism, and judicial efficiency."   *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).   Thus, where deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claims on their merits and forgo an analysis of cause and prejudice.  *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982).  The Court chooses to exercise such discretion here and address Ground Two on its merits.

### 2.    Merits Analysis

The Court rejects Petitioner's claim under Ground Two on its merits.  Clearly established federal law provides that in order for Petitioner to establish a violation of his federal due process rights by the failure to give a jury instruction, Petitioner must demonstrate that the instruction should have been given, and that its omission "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  A state

court's "failure to correctly instruct the jury on a defense may deprive the defendant of his due process right to present a defense." *Bradley v. Duncan,* 315 F.3d 1091, 1099 (9th Cir. 2002). "A defendant is entitled to have the judge instruct the jury on his theory of defense provided it is supported by law and has some foundation in the evidence." *United States v. Fejes*, 232 F.3d 696, 702 (9th Cir. 2000). Where the failure to give an instruction is in issue, the petitioner's burden of demonstrating a due process violation is "especially heavy." *Kibbe*, 431 U.S. at 155. "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id*.

Moreover, even if the trial court's failure to give the instruction violated due process, habeas relief would still not be available unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). When the state court has found any error to be harmless, the Court may not grant relief for the error "unless *the harmlessness determination itself* was unreasonable." *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (emphasis in original)).

To assess the merits of Ground Two, the Court turns to the jury instructions given at trial by the San Diego Superior Court. At trial, the jury was properly instructed on the elements of the crime of robbery as follows:

> Now, ladies and gentlemen, in Count 4, the defendant is charged with the crime of robbery. Every person who takes personal property owned by someone else against the will and from the immediate possession of the owner, accompanied by means of force or fear and with the specific intent permanently to deprive the owner of the property, is guilty of the crime of robbery. The taking element of robbery is comprised of, A, the gaining of possession of property by the perpetrator, and B, the asportation of that property. Asportation continues so long as the property's being carried away by the perpetrator to a place of temporary safety.

> Immediate presence means an area within the owner's reach, observation or control, so that he could, if not prevented by fear, recover possession of the subject property.

To prove that the defendant is guilty of robbery, the people must prove five things. No. 1, the defendant took the personal property of any value that was not his own, and No. 2, the property was taken from the owner's immediate presence; No. 3, the owner did not consent to the taking of the property; No. 4, the defendant used force against the owner to take and/or retain possession of the property, and No. 5, when the defendant used force to take and/or retain the property, he intended to deprive the owner of it permanently.

A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it either personally or through another person. A store or business employee who is on duty has possession of the property of that store or business. The defendant's intent to steal, that is, to deprive the owner of the property permanently, must have been formed before or during the time he used force. If the defendant did not form this required intent until after using force, then he did not commit robbery. Where [property] is originally taken by the defendant without the use of force, and thereafter while retaining possession of the property the defendant uses force to prevent the owner from recovering the property, or to facilitate an[] escape with the property, then the crime of robbery is committed provided that the foregoing elements, 1 through 5, have all been proven beyond any reasonable doubt.

(ECF No. 10–4, at 112–14.)

Having performed an independent review of both the record and silent denial of the California Supreme Court, the Court concludes that Ground Two fails under § 2254(a) because there was no instructional error amounting to a denial of Petitioner's constitutional rights.[3]  The jury was properly instructed on the elements of robbery.  And, Petitioner has not carried his "especially heavy" burden of demonstrating that the state court erred when

---

[3] For purposes of this Report and Recommendation, the Court assumes, but does not hold, that Petitioner's proposed modification(s) to the jury instructions for robbery would also be a correct statement of California law.

14

it held Petitioner was not entitled to a jury instruction on his defense that his use of force was accidental.  *See Kibbe*, 431 U.S. at 155.  At trial, the superior court held that the defendant could *argue* his accidental force defense to the jury.  However, the court held that this defense would not be supported by the requested jury instruction because the evidence at trial showed Petitioner's use of force to be intentional, *not* accidental.  (ECF No. 10–4, at 99 ("The evidence in this case is that . . . . it was a push, which suggests intention – intentional.").)

Here, Petitioner argues that the following jury instruction would have cured the constitutional defect in the jury instructions given at trial for the crime of robbery:

> To satisfy the force element in the crime of robbery the law requires that the defendant exert some quantum of force in excess of that necessary to accomplish the mere seizing of the property. If you find that someone other than the defendant exerted physical force that caused contact between the victim and defendant you must find the force element has not been proven.

(Pet. at 7; ECF No. 10–13, at 19.)  However, Petitioner has not shown that his defense that somebody else exerted the force has "some foundation in the evidence" presented at trial.  *See Fejes*, 232 F.3d at 702 ("A defendant is entitled to have the judge instruct the jury on his theory of defense provided it is supported by law and has some foundation in the evidence.").

Indeed, there was substantial evidence at trial that Petitioner used intentional force against the Marshalls loss prevention officer when fleeing the store with stolen merchandise.  Particularly, Ruiz testified repeatedly that Petitioner pushed him as Petitioner ran from the store carrying the stolen sneakers.  (*Id.* at 68–70, 78.)  In contrast, Petitioner did not present testimony or other evidence to support his contention that he "had no choice but to collide with [Ruiz]" because the security guard "suddenly cut in front of him as he ran full stride."  (ECF No. 10–9, at 28.)  Without any evidence to support the requested instruction, Petitioner is unable to meet his high burden to demonstrate that the failure to give the proposed modified accident instruction "so infected the entire trial that the resulting conviction violates due process."  *See Estelle*, 502 U.S. at 72.  Thus, Petitioner

fails to meet his high burden to show that the omission of the proposed modified jury instruction violated his due process rights.

The Court concludes that there was no instructional error with respect to the jury instructions that caused Petitioner to be held in custody in violation of his constitutional rights. *See* 28 U.S.C. § 2254(a).[4]  Accordingly, the Court **RECOMMENDS** habeas relief be **DENIED** as to Ground Two.

## C.   Ground Three

In Ground Three, Petitioner argues that all four of his convictions should be reversed because his defense counsel rendered ineffective assistance by failing to subpoena and present two witnesses. (Pet. at 8.)  Petitioner asserts that the two witnesses, Officer Reilly of the El Cajon Police Department and Loss Prevention Officer Michael Perez of Walmart, were "crucial to the defense" because their "testimony would have raised reasonable doubt" about the testimony of other witnesses. (*Id*.)  Thus, Petitioner argues that by failing to call these witnesses, defense counsel rendered ineffective assistance, which violated his constitutional right to due process. (*Id*.)

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth a two prong test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as

---

[4] Because there was no constitutional error, the Court need not address whether the error alleged in Ground Two was harmless.  However, the Court notes that the California Court of Appeal made a harmlessness determination in the context of a similar instructional error argument raised by Petitioner on direct appeal. (ECF No. 10–12, at 11–16.)  Petitioner's argument before the Court of Appeal was that the trial court "prejudicially erred in denying his request for an instruction under CALCRIM No. 3404 on the defense of accident." (*Id*.)  The Court of Appeal held that even if it were to assume the trial court erred, the assumed error was harmless under any standard of prejudice because there was no evidence to support Petitioner's theory that his collision with Ruiz was accidental. (*Id*. at 11, 16.)

16

the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). Thus, "[a] tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel." *People of Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984); *see also Strickland,* 466 U.S. at 690; *Reynolds v. Smith*, 124 F.3d 212 (9th Cir. 1997).

Second, a petitioner must show that counsel's deficient performance prejudiced the defense. *Id.* at 694. "With regard to the required showing of prejudice, the proper standard requires the defendant to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Daire v. Lattimore*, 818 F.3d 454, 461 (9th Cir. 2016) (quoting *Strickland*, 466 U.S. at 694). However, courts need not address both the deficiency prong and the prejudice prong because the *Strickland* test is conjunctive: if a petitioner fails to make a sufficient showing of either prong, his claim fails. *Id.* at 697.

In *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Supreme Court emphasized the application of *Strickland* to ineffective assistance of counsel claims and its relationship to § 2254(d)'s deferential standard of review. *Id.* When analyzing an argument under *Strickland* in the context of § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" which is a different question from "asking whether defense counsel's performance fell below Strickland's standard." *Id.* at 785.

Petitioner raised Ground Three to the California Supreme Court in a petition for review, which was summarily denied. (Pet. at 2; ECF No. 10–13; ECF No. 10–14.) The California Court of Appeal, however, denied Ground Three on the merits in a reasoned opinion. (ECF No. 10–12.) The Court looks through the silent denial of Ground Three by

the California Supreme Court and applies 28 U.S.C. § 2254(d) to the underlying appellate court opinion.  *See Ylst*, 501 U.S. at 804.

In its analysis of the Supreme Court's holding in *Strickland*, the California Court of Appeal stated:

> Applying a highly deferential standard of scrutiny and indulging a strong presumption that the conduct of Williams's trial counsel fell within the wide range of reasonable professional assistance, as we must (*Strickland, supra,* 466 U.S. at p. 689), we reject Williams's ineffective-assistance-of-counsel claim because the decisions made by his trial counsel not to call Officer Reilly and Perez as defense witnesses were reasonable tactical decisions that this court will not second-guess. (See *People v. Kelly, supra,* 1 Cal.4th at p. 520.)

> Specifically, defense counsel's decision not to call Officer Reilly was a sound trial tactic because, as she explained to the court at the *Marsden* hearing, Officer Reilly's testimony would have "highlight[ed]" the testimony of Marshalls[] loss prevention officer, Ruiz, that Williams pushed Ruiz out of the way as Williams fled the scene with the stolen merchandise.

> Defense counsel's decision not to call Perez, who was one of Walmart's loss prevention officers, also was a sound trial tactic because, as defense counsel explained to the court, two witnesses had already positively identified Williams as the perpetrator of the March 2013 theft committed at the Walmart store. Also, the reporter's transcript of Perez's testimony at the preliminary hearing in this matter shows that, had he testified at trial, he could have offered further inculpatory evidence against Williams because his preliminary hearing testimony confirmed key aspects of the crime. For example, Perez testified at the preliminary hearing that Williams placed merchandise in a reusable bag he had brought with him, he first left the bag in the greeting card department, he went outside the store for a few minutes, and then he returned to the store and grabbed the bag.

> As sound tactical reasons supported defense counsel's decisions not to call Officer Reilly and Perez as witnesses, we conclude Williams has failed to meet his threshold burden of demonstrating that his counsel's performance was below an

> objective standard of reasonableness under prevailing professional norms. Accordingly, we need not address Williams's related contention that he suffered prejudice as a result of the claimed ineffective assistance of counsel, and, thus, we affirm the judgment.

(ECF No. 10–12, at 16–20.) Thus, the California Court of Appeal held that Petitioner failed to meet his threshold burden of demonstrating that his counsel's performance fell below an objective standard of reasonableness under professional norms.    And, because the *Strickland* test is conjunctive, the Court of Appeal refrained from assessing whether Petitioner suffered prejudice as a result of the claimed ineffective assistance of counsel.

Here, the Court concludes that the California Court of Appeal reasonably applied the *Strickland* standard in concluding Petitioner failed to demonstrate defense counsel provided ineffective assistance.  Petitioner claims that his defense counsel should have called Officer Reilly as a defense witness because Officer Reilly would have testified that the encounter between Petitioner and Ruiz took place in the parking lot, not the sidewalk before the parking lot.  (*See* Mem. P. and A. Supp. Pet. at 30, ECF No. 10–9.)  Petitioner further assumes that such testimony "would have been damaging to the credibility of Juan Ruiz," because Ruiz testified that the encounter took place on the sidewalk before the parking lot, not in the parking where Petitioner alleges that the encounter actually took place.  (*Id.*)  However, Petitioner concedes that Officer Reilly also "would have simply restated Juan Ruiz's version of the encounter" – that Petitioner pushed Ruiz, which is what his trial counsel sought to avoid.  (*See id.* at 32.)

The Court of Appeal reasonably determined that Petitioner's arguments amount to dissatisfaction with his counsel's sound trial strategy, which cannot form a basis for an ineffective assistance of counsel claim.  *See Strickland,* 466 U.S. at 690; *Santos,* 741 F.2d at 1169.  As the California Court of Appeal noted, "defense counsel's decision not to call Officer Reilly was a sound trial tactic [because] . . . Officer Reilly's testimony would have 'highlight[ed]'" Ruiz's testimony that Petitioner pushed Ruiz out of the way as Petitioner fled the scene with stolen merchandise.  (ECF No. 10–12, at 19.)  The Court of Appeal reasonably determined that Petitioner failed to demonstrate that his counsel's decision not

to call Officer Reilly fell below an objective standard of reasonableness under prevailing professional norms.

Similarly, the Court of Appeal reasonably determined that Petitioner also failed to establish that defense counsel fell below an objective standard of reasonableness in deciding not to call Michael Perez as a witness.  As the Court of Appeal reasoned, "defense counsel's decision not to call Perez, who was one of Walmart's loss prevention officers, also was a sound trial tactic because . . . two witnesses had already positively identified Petitioner as the perpetrator of the March 2013 theft committed at the Walmart store." (ECF No. 10–12, at 19.)  Although Petitioner contends that Perez could not identify him as the perpetrator despite being "shoulder to shoulder" with him at times, Petitioner fails to show that trial counsel's decision not to call Perez was unreasonable.  The Court of Appeal noted that Perez had observed the perpetrator bring a reusable bag into Walmart, leave the bag in the greeting card department, go outside for a few minutes, then return to the store to grab the bag.  (*Id.* at 19–20.)  Because Perez could offer this further inculpatory evidence against Petitioner, the Court of Appeal found his trial counsel's decision not to call Perez as a witness a "sound trial tactic."  (*Id.* at 19.)  The Court concludes that the California Court of Appeal had sufficient evidence to find that Petitioner's trial counsel made a sound tactical decision to not call Perez as a witness.

The California Court of Appeal's determination that Petitioner failed to show that his counsel's performance was deficient under *Strickland* was reasonable and easily withstands habeas review.  Therefore, the Court of Appeal's denial of Petitioner's habeas claim was not "contrary to" or an "unreasonable application" of any United States Supreme Court decision under § 2254(d)(1), nor was the decision an "unreasonable determination of the facts in light of the evidence presented" under § 2254(d)(2).  Accordingly, the Court **RECOMMENDS** habeas relief be **DENIED** as to Ground Three.

/ / /

/ / /

/ / /

## V.    CONCLUSION

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

**IT IS ORDERED THAT** any party to this action may file written objections with the District Court and serve a copy on all parties no later than **July 22, 2016**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED THAT** any reply to the objections shall be filed with the District Court and served on all parties no later than **August 5, 2016**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

   **IT IS SO ORDERED.**

Dated:  July 1, 2016

*Jill Burkhardt*
_____
Hon. Jill L. Burkhardt
United States Magistrate Judge